UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| STATE OF ALABAMA AND THE ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, COMMONWEALTH OF KENTUCKY, STATE OF NORTH CAROLINA *ex rel.* ATTORNEY GENERAL ROY COOPER, and STATE OF TENNESSEE, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____ |
| Plaintiffs, | )<br>) **COMPLAINT** |
| v. | )<br>) |
| TENNESSEE VALLEY AUTHORITY, | )<br>) |
| Defendant. | )<br>) |

Plaintiffs the States of Alabama, North Carolina and Tennessee and

Plaintiff the Commonwealth of Kentucky (the "States") hereby allege:

## NATURE OF THE ACTION

1.     This is a joint civil action brought to enforce the Clean Air Act

("CAA" or "the Act"), 42 U.S.C. §7401 et seq. and implementing laws of the

States of Alabama and Tennessee and the Commonwealth of Kentucky for

injunctive relief and civil penalties.

2.     In general, the States allege that Defendant the Tennessee Valley

Authority ("TVA") violated the Prevention of Significant Deterioration ("PSD")

program of the CAA, 42 U.S.C. §§7470-7492, and the provisions of other CAA

programs and the associated state implementation plans ("SIPs") of the States of

Alabama and Tennessee and the Commonwealth of Kentucky ("Regulating

States") by modifying coal-fired electric generating units without obtaining

required permits and without complying with emissions limitation obligations and

other requirements.

3.      As a result, and as a primary example of the import of this case, TVA

has failed to limit emissions of sulfur dioxide ($SO_2$), oxides of nitrogen ($NO_X$) and

particulate matter ("PM") at several coal-fired units to the level of "best available

control technology" ("BACT"), 42 U.S.C. §§7475(a)(5), 7479(3), and has failed

to secure proper permits and the other terms and limitations that accompany those

permits.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action as

brought by the Regulating States pursuant to 28 U.S.C. §§1331 and 1355.

5.      With regard to the State of North Carolina, this Court has jurisdiction

over the subject matter pursuant to CAA §304, 42 U.S.C. §7604, which allows for

"persons" to bring civil enforcement actions subject to a 60-day pre-filing notice

requirement.

6.     Plaintiff North Carolina is a "person" as that term is defined in CAA §302(e) and used in §304(a).  42 U.S.C. §§7602(e), 7604(a).

7.     TVA is a "person" as that term is defined in CAA §302(e) and used in §304(a).  42 U.S.C. §§7602(e), 7604(a).

8.     On or about November 10, 2004, North Carolina by and through Attorney General Roy Cooper sent a letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the chief environmental officials of the Regulating States, and the president and general counsel of TVA indicating that North Carolina intended to file an action under CAA §304 regarding the violations alleged in this Complaint.  A copy of that letter is attached hereto as Exhibit 1 and is incorporated as if set forth herein.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(2), (b)(3) and (c) and 1395(a).  TVA is a corporate entity that owns property in and conducts significant business in this District.  This business includes, but is not limited to, the construction and operation of coal-fired, natural gas-fired, hydropower and nuclear electricity generating stations and the sale and distribution of electricity.  In addition, certain activities of TVA at the three coal-fired power plants that TVA owns and operates in this District are a substantial part of the events giving rise to this action, as discussed more fully below, and these facilities are property that is the subject of this action.  Moreover, the excess

3

emissions that have occurred at each of the plants against which counts are set forth below have been transported in the atmosphere to and caused harm in this District.

## PARTIES

10.     The Plaintiffs are sovereign States and a Commonwealth acting by and through their respective agents, who are authorized to bring this action on behalf of the Plaintiff States.

11.     TVA is a federal corporate entity created pursuant to Tennessee Valley Authority Act §1.  16 U.S.C. §831.

## STATUTORY BACKGROUND

### National Ambient Air Quality Standards

12.     The CAA is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. §7401(b)(1).

13.     Section 109 of the Act, 42 U.S.C. §7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to CAA §108. Id. §7408.

4

14.     The primary NAAQS must be established at a level that is "requisite to protect the public health" with "an adequate margin of safety," and the secondary NAAQS must be "requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air."  42 U.S.C. §7409(b).

15.     Under CAA §107(d), 42 U.S.C. §7407(d), each state is required to designate for those areas within its boundaries whether the air quality is better or worse than the NAAQS for each criteria pollutant, or whether the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area.  An area that cannot be classified due to insufficient data is "unclassifiable."

16.     At all times relevant to the facts stated below, EPA maintained properly promulgated NAAQS for $SO_2$, $NO_X$ (measured by nitrogen dioxide ($NO_2$)) and particulate matter.  The particulate matter NAAQS was promulgated in 1971 and was measured as total suspended particulate ("TSP").  In 1987, EPA revised the standard to measure only particulate matter of less than 10 microns ("PM10").  For the purposes of this Complaint, TSP and PM10 and the associated standards will be referred to collectively as "PM" and the "PM NAAQS."

5

## The New Source Review Program

17.    The Act provides for the review and permitting of new and modified sources prior to construction of a new source or the modification of an existing source.  The program applies only if certain threshold criteria are met.

18.    For sources in attainment or unclassifiable areas, the Prevention of Significant Deterioration ("PSD") permitting program applies.  See 42 U.S.C. §7475.  For sources in nonattainment areas, the Nonattainment New Source Review ("Nonattainment NSR") permitting program applies.  Together, these programs are referred to simply as New Source Review ("NSR").

19.    Part C of Title I of the Act, 42 U.S.C. §§7470-7492, sets forth requirements for the PSD program, which applies in those areas designated as either attainment or unclassifiable.  These requirements are designed, *inter alia*, to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process.  Id. §7470.  The PSD permitting program is a part of Part C.

20.    Section 161 of the Act, 42 U.S.C. §7471, requires that each SIP include a PSD program that is enforceable by the State.

6

21.     Section 165(a) of the Act, 42 U.S.C. §7475(a), among other things,

prohibits the construction and operation of a "major emitting facility" in an area

designated as attainment unless a permit has been issued that comports with the

requirements of §165, including the requirement that the facility limit emissions

to a level defined by "best available control technology" or "BACT" for each

pollutant for which the facility has triggered the PSD requirements.

22.     Section 169(1) of the Act, 42 U.S.C. §7479(1), designates fossil-fuel

fired steam electric plants of more than two hundred and fifty million British

thermal units ("BTUs") per hour heat input and that emit or have the potential to

emit one hundred tons per year or more of any pollutant to be "major emitting

facilities."

23.     Section 169(2)(c) of the Act, 42 U.S.C. §7479(2)(C), defines

"construction" to include "modification" as defined in CAA §111(a), id.

§7411(a).  Section 111 defines "modification" as "any physical change in, or

change in the method of operation of, a stationary source which increases the

amount of any air pollutant emitted by such source or which results in the

emission of any air pollutant not previously emitted."

24.     EPA's rules provide that "construction" or "modification" of a

facility triggers the PSD permitting requirements only if the "construction" or

"modification" results in increased emissions of a regulated pollutant above a certain threshold. 40 C.F.R. §51.166.

25. Part D of Title I of the Act, 42 U.S.C. §§7501-7515, sets forth requirements applicable to sources in nonattainment areas in order to provide for timely attainment in those areas. The Nonattainment NSR permitting program is included in Part D.

26. Sections 172(c)(5) and 173 of the Act, 42 U.S.C. §§7502(c)(5), 7503, require that each SIP contain a Nonattainment NSR permit program that is enforceable by the State.

27. Section 172(c)(5) of the Act, 42 U.S.C. §7502(c)(5), requires the issuance of permits for "the construction and operation of new or modified major stationary sources anywhere in [any] nonattainment area . . . ." Such permits must limit emissions to a level defined by the "lowest achievable emission rate" or "LAER" for each pollutant for which the facility has triggered the Nonattainment NSR requirements. Id. §7503(a)(2).

28. A "major stationary source" is "any stationary facility or source of air pollutants which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant . . . ." 42 U.S.C. §7602(j).

29. Section 171 of the Act, 42 U.S.C. §7501(4), defines "modification" as defined in CAA §111(a), id. §7411(a). Section 111 defines "modification" as

8

"any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

30.     EPA's rules provide that "construction" or "modification" of a facility triggers the Nonattainment NSR permitting requirements only if the "construction" or "modification" results in increased emissions of a regulated pollutant above a certain threshold.  40 C.F.R. §51.165.

## Minor NSR

31.     Pursuant to §110(a)(2)(C) of the Act, 42 U.S.C. §7410(a)(2)(C), a state may also maintain, as part of its SIP, a program known as "minor NSR."  In general, minor NSR programs apply to the construction or modification of a broader range of sources than the PSD and Nonattainment NSR permit programs.

## New Source Performance Standards

32.     Section 111 of the CAA, 42 U.S.C. §7411, requires EPA to promulgate emissions standards applicable to certain categories of sources.  These new source performance standards ("NSPS") apply to both new and modified sources in that category.  The term "modification means any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source . . . ."  Id. §7411(a)(4).  However, an electric utility steam generating unit is not considered to have been

9

"modified" if the "change does not increase the maximum hourly emissions of any pollutant regulated under this section above the maximum hourly emissions achievable at that unit during the 5 years prior to the change." 40 C.F.R. §60.14(h).

33. EPA has promulgated NSPS for the category of electric utility steam generating units. 40 C.F.R. Part 60 subpart Da. These rules were in effect at all relevant times although they were previously codified at id. §§60.40a - 60.52a.

**The Title V Operating Permit Program**

34. Title V of the CAA, 42 U.S.C. §§7661-7661f, establishes an operating permit program for certain sources, including "major sources." One purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including NSR requirements, are collected in a single permit document.

35. The Title V operating permit program of the State of Alabama was given interim approval by EPA on December 15, 1995 and final approval on November 28, 2001. 40 C.F.R. Part 70 Appx. A. The Alabama Title V program is codified at Ala. Admin. Code ch. 335-3-16.

36. The Title V operating permit program of the Commonwealth of Kentucky was given interim approval by EPA on December 14, 1995 and final approval on November 30, 2001. 40 C.F.R. Part 70 Appx. A; 60 Fed. Reg.

57,188 (1995).  The Kentucky Title V program is codified at 401 Ky. Admin.

Regs. 52:020.

37.     The Title V operating permit program of the State of Tennessee was

given interim approval by EPA on August 28, 1996 and final approval on

November 30, 2001.  40 C.F.R. Part 70 Appx. A.  The Tennessee Title V program

is codified at Tenn. Comp. R. & Regs. R. 1200-3-9-.02.

38.     Section 502(a) of the Act, 42 U.S.C. §7661a(a), and the Title V

operating permit programs in the SIPs of the Regulating States (including those

parts of the Tennessee SIP delegated to Memphis/Shelby County, as discussed

below) make it unlawful for any person to operate a major source except in

compliance with a permit issued by a permitting authority under Title V.

39.     Section 504(a) of the Act, 42 U.S.C. §7661c(a), along with

implementing federal regulation and the SIPs of the Regulating States (including

those parts of the Tennessee SIP subject to a Certificate of Exemption including

Memphis/Shelby County, as discussed below) have at all relevant times required

that each Title V permit include, among other things, enforceable emission

limitations and such other conditions as are necessary to assure compliance with

applicable requirements of the CAA and the requirements of the applicable SIP,

including any applicable Nonattainment NSR requirement to comply with an

emission rate that meets LAER, any applicable PSD requirement to comply with

11

an emission rate that meets BACT, and any applicable NSPS requirement. 40 C.F.R. §70.2; Ala. Admin. Code r. 335-3-16-.05; 401 Ky. Admin. Regs. 52:020, §10 (incorporating "Cabinet Provisions and Procedures for Issuing Title V Permits," which is incorporated herein by reference); Tenn. Comp. R. & Regs. R. 1200-3-9-.02(11)(e)(1)(i).

40.     The Title V operating permit programs of the Regulating States (including those parts of the Tennessee SIP subject to a Certificate of Exemption including Memphis/Shelby County, as discussed below) require that a source submit a complete permit application which, among other things, identifies all applicable requirements (including any requirement to meet LAER pursuant to Nonattainment NSR, to meet BACT pursuant to PSD and to comply with NSPS), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance. Ala. Admin. Code r. 335-3-16-.04(8); 401 Ky. Admin. Regs. 52:020, §5; Tenn. Comp. R. & Regs. R. 1200-3-9-.02(11)(d)(2).

**State Implementation Plans**

41.     Pursuant to CAA §110, 42 U.S.C. §7410, each State must adopt and submit to EPA for approval a state implementation plan ("SIP") that provides for the attainment and maintenance of the NAAQS.

**The Alabama SIP**

42.     Alabama has adopted a SIP that has been approved by EPA and was approved by EPA in relevant part at all times relevant to the events described in this Complaint.  See 40 C.F.R. §52.50.

43.     Applicable provisions in the PSD regulations in the Alabama SIP have at all relevant times prohibited major stationary sources from undertaking a major modification in an area designated as attainment without, among other things, first obtaining a PSD permit, undergoing a BACT determination, and being limited by permit to BACT emissions levels for relevant pollutants.  Ala. Admin. Code r. 335-3-14-.04.

44.     The definitions contained in the PSD regulations in the Alabama SIP have at all relevant times defined "major modification" to include "any physical change in or change in the method of operation of a major stationary source that would result in a significant . . . net emissions increase . . . of any regulated NSR pollutant . . . ."  Ala. Admin. Code r. 335-3-14-.04(2)(b).  These regulations have at all relevant times defined "major stationary source" to include "fossil fuel-fired steam electric plants of more than 250 million British thermal units per hour heat input" that "emit[], or ha[ve] the potential to emit . . ., 100 tons per year or more of any regulated NSR pollutant . . . ."  Id. r. 335-3-14-.04(2)(a)(1).

13

45.    Applicable provisions in the Nonattainment NSR regulations in the Alabama SIP have at all relevant times prohibited any major facility from undertaking a major modification in an area designated as nonattainment without, among other things, first obtaining a Nonattainment NSR permit, undergoing a LAER determination, and being limited by permit to LAER emissions levels for relevant pollutants.  Ala. Admin. Code r. 335-3-14-.05.

46.    The definitions contained in the Nonattainment NSR regulations in the Alabama SIP have at all relevant times defined "major modification" to include "any physical change in, change in the method of operation of, or addition to a major facility which would result in a significant net emissions increase at the facility of any pollutant subject to regulation under the CAA."  Ala. Admin. Code r. 335-3-14-.05(2)(d).  These regulations have at all relevant times defined "major facility" to include "[a]ny source or facility for which the potential emission rate is equal to or greater than 100 tons per year of any pollutant subject to regulation under the Federal Clean Air Act (CAA)[.]"  Id. r. 335-3-14-.05(2)(c).

47.    Applicable provisions in the permitting regulations in the Alabama SIP have at all times prohibited the "building, erecting, altering, or replacing any article, machine, equipment, or other contrivance, the use of which may cause the issuance of or an increase in the issuance of air contaminants" without a minor

NSR permit.  Ala. Admin. Code r. 335-3-14-.01(1)(a).  A minor NSR permit must be conditioned to meet the standards of Ala. Admin. Code r. 335-3-14-.03.

48.     The Alabama SIP incorporates the federal NSPS program by reference, including the rules regarding applicability, the definition of "modification" and the standards applicable to electric utility steam generating units.  Ala. Admin. Code r. 335-3-10-.02(1), (2)(a).

49.     The Alabama SIP includes an approved Title V operating permits program, as described above.

### **The Kentucky SIP**

50.     Kentucky has adopted a SIP that has been approved by EPA and was approved by EPA in relevant part at all times relevant to the events described in this Complaint.  See 40 C.F.R. §52.920.

51.     Applicable provisions in the PSD regulations in the Kentucky SIP have at all relevant times prohibited major stationary sources from undertaking a major modification in an area designated as attainment without, among other things, first obtaining a PSD permit, undergoing a BACT determination, and being limited by permit to BACT emissions levels for relevant pollutants.  401 Ky. Admin. Regs. 51:017.

52.     The definitions contained in the PSD regulations in the Kentucky SIP have at all relevant times defined "major modification" to include "any physical

change in or change in the method of operation of a major stationary source that would result in: a significant emissions increase . . . of a regulated NSR pollutant . . .; and a significant net emissions increase of that pollutant from the major stationary source." 401 Ky. Admin. Regs. 51:010, §1(27) (1990) (incorporating federal definition at 40 C.F.R. §51.166(b)(2)). These regulations have at all relevant times defined "major stationary source" to include "fossil fuel boilers, or combination of fossil fuel boilers, totaling more than 250 million BTU per hour heat input" that "emit[], or ha[ve] the potential to emit . . ., 100 tons per year or more of a regulated NSR pollutant . . . ." Id. 51:010, §1(26) (1990).

53.     Applicable provisions in the Nonattainment NSR regulations in the Kentucky SIP have at all relevant times prohibited any major stationary source from undertaking a major modification in an area designated as nonattainment without, among other things, first obtaining a Nonattainment NSR permit, undergoing a LAER determination, and being limited by permit to LAER emissions levels for relevant pollutants. 401 Ky. Admin. Regs. 51:052.

54.     The definitions contained in the Nonattainment NSR regulations in the Kentucky SIP have at all relevant times defined "major modification" to include "any physical change in or change in the method of operation of a major stationary source that would result in: (1) A significant emissions increase of a regulated NSR pollutant . . .; and (2) A significant net emissions increase of that

16

pollutant from the major stationary source." 401 Ky. Admin. Regs. 51:010,

§1(27) (1990) (incorporating federal definition at 40 C.F.R. §51.165(a)(1)(v)).

These regulations have at all relevant times defined "major stationary source" to

include "fossil fuel boilers, or combination of fossil fuel boilers, totaling more

than 250 million BTU per hour heat input" that "emit[], or ha[ve] the potential to

emit . . ., 100 tons per year or more of a regulated NSR pollutant . . . ." Id.

51:010, §1(26)(1990).

55.    Applicable provisions in the permitting regulations in the Kentucky

SIP have at all times required (subject to exceptions not applicable here) a source

that "proposes to construct, reconstruct, or modify" to secure an application for a

minor NSR permit "prior to commencing construction or making the operational

change . . . ." 401 Ky. Admin Regs. 50:035, §§2(3), 3(4), 14, 15(6) (repealed Jan.

15, 2001). A minor NSR permit must include, among other things, "[e]mission

limitations and standards, including operational requirements and limitations that

assure compliance with applicable requirements at the time of permit issuance."

Id. 50:035, §7(1)(a) (repealed Jan. 15, 2001).

56.    Kentucky has adopted and has been granted delegation of authority

for the federal NSPS program, including the rules regarding applicability, the

definition of "modification" and the standards applicable to electric utility steam

generating units." See 401 Ky. Admin. Regs. 60:005.

57.     The Kentucky SIP includes an approved Title V operating permits program, as described above.

## The Tennessee SIP and the Memphis/Shelby County Local Program

58.     Tennessee has adopted a SIP that has been approved by EPA and was approved by EPA in relevant part at all times relevant to the events described in this Complaint.  See 40 C.F.R. §52.2220.

59.     Applicable provisions in the PSD regulations in the Tennessee SIP have at all relevant times prohibited major stationary sources from undertaking a major modification in an area designated as attainment without, among other things, first obtaining a PSD permit, undergoing a BACT determination, and being limited by permit to BACT emissions levels for relevant pollutants.  Tenn. Comp. R. & Regs. R. 1200-3-9-.01(4).

60.     The definitions contained in the PSD regulations in the Tennessee SIP have at all relevant times defined "major modification" to include "any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase . . . of a regulated NSR pollutant . . .; and a significant net emissions increase of that pollutant from the major stationary source."  Tenn. Comp. R. & Regs. R. 1200-3-9-.01(4)(b)(2). These regulations have at all relevant times defined "major stationary source" to include "[f]ossil-fuel fired steam electric plants of more than 250 million BTU per

18

hour heat input" that "emit or have the potential to emit, 100 tons per year or more of a regulated NSR pollutant." Id. 1200-3-9-.01(4)(b)(1).

61.     Applicable provisions in the permitting regulations in the Tennessee SIP have at all relevant times prohibited the "construction of a new air contaminant source or the modification of an air contaminant source which may result in the discharge of air contaminants" (except as specifically exempted by the rule) without a minor NSR permit. Tenn. Comp. R. & Regs. R. 1200-3-9-.01(1)(a). A "modification" is, among other things, "any physical change in or change in the method of operation of an air contaminant source, which increases the amount of any air contaminant (to which an emission standard applies) emitted by such source . . . ." Id. 1200-3-2-.01(1)(aa). A minor NSR permit shall not be issued unless it is "demonstrate[d] that allowable emission increases would not cause or contribute to air pollution in violation of any ambient air quality standard . . ., of any national ambient air quality standard, or any applicable maximum allowable increase . . . ." Id. 1200-3-9-.01(1)(f).

62.     Tennessee has an approved Title V operating permits program, as described above.

63.     With regard to the area of the City of Memphis, Tennessee and Shelby County, Tennessee, the State of Tennessee has issued a Certificate of Exemption to the local governments pursuant to Tenn. Code Ann. §68-201-115.

19

During all times relevant to this action, this Certificate of Exemption was recognized by EPA. 40 C.F.R. §52.2220 (Table 2). This Certificate of Exemption (hereinafter the "Memphis/Shelby County local program") incorporates all relevant Tennessee SIP and Title V provisions discussed above. E.g., Memphis City Code §§16-46 (incorporating Tenn. Comp. R. & Regs. R. 1200-3-2), 16-77 (incorporating Tenn. Comp. R. & Regs. R. 1200-3-9).

**Enforcement Authority**

64.    The State of Alabama, through its Attorney General and its Department of Environmental Management, is authorized to bring suit regarding the violations of law discussed below that occurred in the State of Alabama in order to recover civil penalties of $25,000 per day per violation and to secure injunctive relief. Ala. Code §22-22A-5(18), (19).

65.    The Commonwealth of Kentucky, through its Energy and Environment Cabinet, Office of General Counsel, is authorized to bring suit regarding the violations of law discussed below that occurred in the Commonwealth of Kentucky in order to recover civil penalties of $25,000 per day per violation and to secure injunctive relief. Ky. Rev. Stat. §224.99-010 to -020.

66.    The North Carolina Attorney General is authorized to bring this action on behalf of the State of North Carolina to protect the public interest as *parens patriae* and to protect the resources of the State, which are directly

20

impacted by emissions from TVA's facilities.  E.g., 42 U.S.C. §§7602(e), 7604(a); N.C. Gen. Stat. §114-2.

67.     The State of Tennessee, through its Attorney General, is authorized to bring suit regarding the violations of law discussed below that occurred in the State of Tennessee in order to recover civil penalties of $25,000 per day per violation and to secure injunctive relief.  Tenn. Code Ann. §§8-6-109, 68-201-111, -115(b)(5), -117.

## TVA's Coal-Fired Generating Units

68.     At all times pertinent to this civil action, TVA was and is the owner and operator of the following coal-fired electric generating stations in the State of Alabama, which are located in or near the localities listed below and composed of the units indicated below of the approximate generating capacities indicated below:

   a.  Colbert (Tuscumbia, Ala.): Units 1 through 4 (200 megawatts ("MW") each) and Unit 5 (550 MW).

   b.  Widows Creek (Stevenson, Ala.):  Units 1 through 6 (140.6 MW each), Unit 7 (575 MW) and Unit 8 (550 MW).

69.     At all times pertinent to this civil action, TVA was and is the owner and operator of the following coal-fired electric generating stations in the Commonwealth of Kentucky, which are located in or near the localities listed

21

below and composed of the units indicated below of the approximate generating capacities indicated below:

    a. Paradise (Drakesboro, Ky.): Unit 1 (704 MW), Unit 2 (704 MW) and Unit 3 (1150.2 MW).

    b. Shawnee (Paducah, Ky.): Units 1 through 10 (175 MW each).

70. At all times pertinent to this civil action, TVA was and is the owner and operator of the following coal-fired electric generating stations in the State of Tennessee, which are located in or near the localities listed below and composed of the units indicated below of the approximate generating capacities indicated below:

    a. Allen (Memphis, Tenn.): Units 1 through 3 (330 MW each).

    b. Bull Run (Clinton, Tenn.): Unit 1 (950 MW).

    c. Cumberland (Cumberland City, Tenn.): Unit 1 (1300 MW) and Unit 2 (1300 MW).

    d. John Sevier (Rogersville, Tenn.): Units 1 through 4 (200 MW each).

    e. Kingston (Kingston, Tenn.): Units 1 through 4 (175 MW each) and Units 5 through 9 (200 MW each).

71. At all times pertinent to this civil action, each of these 45 units was a "major emitting facility" and a "major stationary source," within the meaning of the Act and the New Source Review regulations in the respective Regulating

States' SIPs (including those parts of the Tennessee SIP implemented by Memphis/Shelby County under the Certificate of Exemption, as discussed below). At all times pertinent to this civil action, each of the 45 units was an "article, machine, equipment, or other contrivance" under the Alabama SIP, a "source" under the Kentucky SIP or an "air contaminant source" under the Tennessee SIP and the Memphis/Shelby County local program, within the meaning of the respective minor NSR program. At all times pertinent to this civil action, each of these 9 facilities was a "major source" within the meaning of Title V of the Act and the Title V program regulations of the respective State's SIP. At all times pertinent to this civil action, each of these 45 units was a "stationary source" within the meaning of the NSPS program.

72.    At all times relevant to the events described below, all relevant areas were attainment for $SO_2$, $NO_X$ and PM except as follows. The areas in which the Colbert and Widows Creek plants are located were nonattainment for $SO_2$; the area where the Shawnee plant is located was nonattainment for PM; and the area where the Paradise plant is located was nonattainment for both $SO_2$ and PM.

73.    $NO_X$, $SO_2$ and PM are pollutants and $NO_X$ and $SO_2$ are precursors to other pollutants. All of these pollutants are regulated under the Clean Air Act and by the States because they are known to damage human health and the environment. Emissions by TVA of $NO_X$, $SO_2$, and PM that would not have

occurred absent the violations set forth below damaged human health and the environment in Alabama, Kentucky, North Carolina and Tennessee.

74.    On April 10, 2000, EPA issued its "Fourth Amended Order and Request for Information" to TVA (Docket No. CAA04-2000-0008). By this Order EPA alleged various violations by TVA at its coal-fired electric generating stations of the NSR and NSPS programs and implementing state law. The allegations were largely upheld on administrative review, In re TVA, 9 E.A.D 357 (Envtl. Appeals Bd. Sept. 15, 2000), but the Order was held to be unenforceable on other grounds, TVA v. Whitman, 336 F.3d 1236 (11th Cir. 2003), cert. denied, 541 U.S. 1030 (2004). The allegations from the Order are included below and the States rely on those allegations.

## FIRST CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Colbert Unit 5)

75.    During the period 1982 through 1983, TVA commenced construction of one or more major modifications, as defined in the Act and the Alabama SIP, at Colbert Unit 5. These modifications included one or more physical changes to or changes in the method of operation at Unit 5, including, but not necessarily limited to, replacing waterwalls and the horizontal reheater, modifying the startup system, adding wingwalls in the furnace, replacing gas proportioning dampers, replacing the windbox, redesigning and replacing the control system, and adding balanced draft conversion.

24

76. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Alabama Nonattainment NSR regulations, of $SO_2$ and, as defined by the Alabama PSD regulations, of $NO_X$ and PM and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Alabama SIP.

77. TVA did not comply with the Nonattainment NSR (for $SO_2$) and PSD (for $NO_X$ and PM) requirements in the Alabama SIP with respect to the major modifications at Colbert Unit 5. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Alabama SIP prior to commencing construction and operation of the major modifications at Colbert Unit 5. TVA also did not undergo BACT and LAER determinations in connection with these major modifications. As such TVA failed to limit emissions to the LAER level for control of $SO_2$ and failed to limit emissions to the BACT level for control of $NO_X$ and PM, as would have been determined by the State of Alabama and required by the Alabama SIP.

78. TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Alabama SIP at Colbert Unit 5. Unless restrained by

an order of this Court, these violations of the Act and the Alabama SIP will continue.

79.     As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## SECOND CLAIM FOR RELIEF
(Minor NSR violations at Colbert Unit 5)

80.     As set forth above, TVA commenced one or more major modifications at Colbert Unit 5. These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Colbert Unit 5 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Alabama SIP. Ala. Admin. Code r. 335-3-14-.01(1)(a).

81.     TVA did not comply with the minor NSR requirements in the Alabama SIP with respect to the modifications at Colbert Unit 5. Among other things, TVA failed to obtain a minor NSR permit as required by the Alabama SIP prior to undertaking the aforementioned activities at Colbert Unit 5.

82.     TVA has violated and continues to violate the minor NSR program of the Alabama SIP at Colbert Unit 5. Unless restrained by an order of this Court, these violations of the Act and the Alabama SIP will continue.

26

83.     As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRD CLAIM FOR RELIEF
(NSPS violations at Colbert Unit 5)

84.     As set forth above, TVA commenced one or more major modifications at Colbert Unit 5. These physical changes to or changes in the method of operation of Colbert Unit 5 resulted in significant net emissions increases (as defined by the Alabama NSPS regulations, which incorporate the federal NSPS regulations) of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the NSPS requirements of the Alabama SIP.

85.     TVA did not comply with the NSPS requirements of CAA §111(e), 42 U.S.C. §7411(e), or the Alabama SIP with respect to the modifications at Colbert Unit 5. Among other things, TVA failed to obtain a permit amendment establishing an appropriate NSPS limit as required by the Alabama SIP prior to commencing construction of the major modifications at Colbert Unit 5 and/or failed to comply with applicable NSPS standards.

86.     TVA has violated and continues to violate the NSPS provisions of the CAA, 42 U.S.C. §7411(e), and the Alabama SIP at Colbert Unit 5. Unless

restrained by an order of this Court, these violations of the Act and the Alabama SIP will continue.

87.     As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FOURTH CLAIM FOR RELIEF
(Title V violations at Colbert Unit 5)

88.     As set forth above, TVA commenced one or more major modifications at Colbert Unit 5, as defined under the Nonattainment NSR and PSD regulations in the Alabama SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo LAER and BACT determinations, to obtain Nonattainment NSR and PSD permits establishing emissions limitations that meet LAER and BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

89.     Subsequently, TVA failed to submit a complete application for a Title V operating permit for Colbert Unit 5 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet LAER and BACT pursuant to LAER and BACT determinations under Nonattainment NSR and PSD, respectively).  TVA failed to obtain a proper Title V operating permit for Colbert

28

Unit 5 that includes emission limitations for $NO_X$ and PM that meet BACT pursuant to a BACT determination and for $SO_2$ that meet LAER pursuant to a LAER determination. TVA thereafter operated Colbert Unit 5 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Alabama Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

90. As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FIFTH CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Widows Creek Unit 5)

91. During the period 1989 through 1990, TVA commenced construction of one or more major modifications, as defined in the Act and the Alabama SIP, at Widows Creek Unit 5. These modifications included one or more physical changes to or changes in the method of operation at Unit 5, including, but not necessarily limited to, replacing elements in the secondary and reheat superheaters and crossovers.

29

92.     These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Alabama Nonattainment NSR regulations, of $SO_2$ and, as defined by the Alabama PSD regulations, of $NO_X$ and PM and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Alabama SIP.

93.     TVA did not comply with the Nonattainment NSR (for $SO_2$) and PSD (for $NO_X$ and PM) requirements in the Alabama SIP with respect to the major modifications at Widows Creek Unit 5. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Alabama SIP prior to commencing construction and operation of the major modifications at Widows Creek Unit 5. TVA also did not undergo BACT and LAER determinations in connection with these major modifications. As such TVA failed to limit emissions to the LAER level for control of $SO_2$ and failed to limit emissions to the BACT level for control of $NO_X$ and PM, as would have been determined by the State of Alabama and as required by the Alabama SIP.

94.     TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Alabama SIP at Widows Creek Unit 5. Unless

restrained by an order of this Court, these violations of the Act and the Alabama SIP will continue.

95.     As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## SIXTH CLAIM FOR RELIEF
(Minor NSR violations at Widows Creek Unit 5)

96.     As set forth above, TVA commenced one or more major modifications at Widows Creek Unit 5. These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Widows Creek Unit 5 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Alabama SIP. Ala. Admin. Code r. 335-3-14-.01(1)(a).

97.     TVA did not comply with the minor NSR requirements in the Alabama SIP with respect to the modifications at Widows Creek Unit 5. Among other things, TVA failed to obtain a minor NSR permit as required by the Alabama SIP prior to undertaking the aforementioned activities at Widows Creek Unit 5.

98.     TVA has violated and continues to violate the minor NSR program of the Alabama SIP at Widows Creek Unit 5. Unless restrained by an order of this Court, these violations of the Act and the Alabama SIP will continue.

31

99.     As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## SEVENTH CLAIM FOR RELIEF
(Title V violations at Widows Creek Unit 5)

100.    As set forth above, TVA commenced one or more major modifications at Widows Creek Unit 5, as defined under the Nonattainment NSR and PSD regulations in the Alabama SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo LAER and BACT determinations, to obtain Nonattainment NSR and PSD permits establishing emissions limitations that meet LAER and BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

101.    Subsequently, TVA failed to submit a complete application for a Title V operating permit for Widows Creek Unit 5 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet LAER and BACT pursuant to LAER and BACT determinations under Nonattainment NSR and PSD, respectively).  TVA failed to obtain a proper Title V operating permit for Widows Creek Unit 5 that includes emission limitations for $NO_X$ and PM that meet BACT

32

pursuant to a BACT determination and for $SO_2$ that meet LAER pursuant to a LAER determination. TVA thereafter operated Widows Creek Unit 5 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Alabama Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

102. As provided in the Alabama SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## EIGHTH CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Paradise Unit 1)

103. During 1985, TVA commenced construction of one or more major modifications, as defined in the Act and the Kentucky SIP, at Paradise Unit 1. These modifications included one or more physical changes to or changes in the method of operation at Unit 1, including, but not necessarily limited to, replacing the cyclones and lower furnace walls, including headers and floor.

104. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Kentucky Nonattainment NSR regulations, of $SO_2$ and PM and, as defined by the Kentucky

33

PSD regulations, of $NO_X$ and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Kentucky SIP.

105.   TVA did not comply with the Nonattainment NSR (for $SO_2$ and PM) and PSD (for $NO_X$) requirements in the Kentucky SIP with respect to the major modifications at Paradise Unit 1. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Kentucky SIP prior to commencing construction and operation of the major modifications at Paradise Unit 1.  TVA also did not undergo BACT and LAER determinations in connection with these major modifications.  As such TVA failed to limit emissions to the BACT level for control of $NO_X$ and failed to limit emissions to the LAER level for control of $SO_2$ and PM as would have been determined by the Commonwealth of Kentucky and as required by the Kentucky SIP.

106.   TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Kentucky SIP at Paradise Unit 1.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

34

107.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## NINTH CLAIM FOR RELIEF
(Minor NSR violations at Paradise Unit 1)

108.   As set forth above, TVA commenced one or more major modifications at Paradise Unit 1.  These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Paradise Unit 1 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Kentucky SIP.  401 Ky. Admin Regs. 50:035, §3(4) (repealed Jan. 15, 2001).

109.   TVA did not comply with the minor NSR requirements in the Kentucky SIP with respect to the modifications at Paradise Unit 1. Among other things, TVA failed to obtain a minor NSR permit as required by the Kentucky SIP prior to undertaking the aforementioned activities at Paradise Unit 1.

110.   TVA has violated and continues to violate the minor NSR program of the Kentucky SIP at Paradise Unit 1.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

111.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

35

## TENTH CLAIM FOR RELIEF
(Title V violations at Paradise Unit 1)

112.   As set forth above, TVA commenced one or more major

modifications at Paradise Unit 1, as defined under the Nonattainment NSR and

PSD regulations in the Kentucky SIP.  As a result, these modifications triggered

the requirements to, *inter alia*, undergo LAER and BACT determinations, to

obtain Nonattainment NSR and PSD permits establishing emissions limitations

that meet LAER and BACT pursuant to such a determination, and to operate in

compliance with such limitations. TVA failed to satisfy these requirements.

113.   Subsequently, TVA failed to submit a complete application for a

Title V operating permit for Paradise Unit 1 and to identify all applicable

requirements, accurately certify compliance with such requirements, and include a

compliance plan for all applicable requirements for which the source was not in

compliance (including the requirement to meet LAER and BACT pursuant to

LAER and BACT determinations under Nonattainment NSR and PSD,

respectively).  TVA failed to obtain a proper Title V operating permit for Paradise

Unit 1 that includes emission limitations for $SO_2$ and PM that meet LAER

pursuant to a LAER determination and for $NO_X$ that meet BACT pursuant to a

BACT determination. TVA thereafter operated Paradise Unit 1 without meeting

such limitations and without having a operating permit that required compliance

with such limitations or that contained a compliance plan for all applicable

36

requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Kentucky Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

114. As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## ELEVENTH CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Paradise Unit 2)

115. During the period 1985 through 1986, TVA commenced construction of one or more major modifications, as defined in the Act and the Kentucky SIP, at Paradise Unit 2. These modifications included one or more physical changes to or changes in the method of operation at Unit 2, including, but not necessarily limited to, replacing the cyclones and lower furnace walls, including headers and floor.

116. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Kentucky Nonattainment NSR regulations, of $SO_2$ and PM and, as defined by the Kentucky PSD regulations, of $NO_X$ and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Kentucky SIP.

117. TVA did not comply with the Nonattainment NSR (for $SO_2$ and PM) and PSD (for $NO_X$) requirements in the Kentucky SIP with respect to the major modifications at Paradise Unit 2. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Kentucky SIP prior to commencing construction and operation of the major modifications at Paradise Unit 2. TVA also did not undergo BACT and LAER determinations in connection with these major modifications. As such TVA failed to limit emissions to the BACT level for control of $NO_X$ and failed to limit emissions to the LAER level for control of $SO_2$ and PM as would have been determined by the Commonwealth of Kentucky and as required by the Kentucky SIP.

118. TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Kentucky SIP at Paradise Unit 2. Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

119. As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

# TWELFTH CLAIM FOR RELIEF
(Minor NSR violations at Paradise Unit 2)

120.    As set forth above, TVA commenced one or more major modifications at Paradise Unit 2.  These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Paradise Unit 2 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Kentucky SIP.  401 Ky. Admin Regs. 50:035, §3(4) (repealed Jan. 15, 2001).

121.    TVA did not comply with the minor NSR requirements in the Kentucky SIP with respect to the modifications at Paradise Unit 2. Among other things, TVA failed to obtain a minor NSR permit as required by the Kentucky SIP prior to undertaking the aforementioned activities at Paradise Unit 2.

122.    TVA has violated and continues to violate the minor NSR program of the Kentucky SIP at Paradise Unit 2.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

123.    As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

# THIRTEENTH CLAIM FOR RELIEF
(Title V violations at Paradise Unit 2)

124. As set forth above, TVA commenced one or more major modifications at Paradise Unit 2, as defined under the Nonattainment NSR and PSD regulations in the Kentucky SIP. As a result, these modifications triggered the requirements to, *inter alia*, undergo LAER and BACT determinations, to obtain Nonattainment NSR and PSD permits establishing emissions limitations that meet LAER and BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

125. Subsequently, TVA failed to submit a complete application for a Title V operating permit for Paradise Unit 2 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet LAER and BACT pursuant to LAER and BACT determinations under Nonattainment NSR and PSD, respectively). TVA failed to obtain a proper Title V operating permit for Paradise Unit 2 that includes emission limitations for $SO_2$ and PM that meet LAER pursuant to a LAER determination and for $NO_X$ that meet BACT pursuant to a BACT determination. TVA thereafter operated Paradise Unit 2 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable

40

requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Kentucky Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

126. As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FOURTEENTH CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Paradise Unit 3)

127. During the period 1985, TVA commenced construction of one or more major modifications, as defined in the Act and the Kentucky SIP, at Paradise Unit 3. These modifications included one or more physical changes to or changes in the method of operation at Unit 3, including, but not necessarily limited to, replacing the cyclones and lower furnace walls, including headers and floor.

128. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Kentucky Nonattainment NSR regulations, of $SO_2$ and PM and, as defined by the Kentucky PSD regulations, of $NO_X$ and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Kentucky SIP.

41

129.    TVA did not comply with the Nonattainment NSR (for $SO_2$ and PM) and PSD (for $NO_X$) requirements in the Kentucky SIP with respect to the major modifications at Paradise Unit 3. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Kentucky SIP prior to commencing construction and operation of the major modifications at Paradise Unit 3. TVA also did not undergo BACT and LAER determinations in connection with these major modifications. As such TVA failed to limit emissions to the BACT level for control of $NO_X$ and failed to limit emissions to the LAER level for control of $SO_2$ and PM as would have been determined by the Commonwealth of Kentucky and as required by the Kentucky SIP.

130.    TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Kentucky SIP at Paradise Unit 3. Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

131.    As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

# FIFTEENTH CLAIM FOR RELIEF
## (Minor NSR violations at Paradise Unit 3)

132.   As set forth above, TVA commenced one or more major modifications at Paradise Unit 3.  These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Paradise Unit 3 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Kentucky SIP.  401 Ky. Admin Regs. 50:035, §3(4) (repealed Jan. 15, 2001).

133.   TVA did not comply with the minor NSR requirements in the Kentucky SIP with respect to the modifications at Paradise Unit 3. Among other things, TVA failed to obtain a minor NSR permit as required by the Kentucky SIP prior to undertaking the aforementioned activities at Paradise Unit 3.

134.   TVA has violated and continues to violate the minor NSR program of the Kentucky SIP at Paradise Unit 3.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

135.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

# SIXTEENTH CLAIM FOR RELIEF
(NSPS violations at Paradise Unit 3)

136.   As set forth above, TVA commenced one or more major modifications at Paradise Unit 3.  These physical changes to or changes in the method of operation of Paradise Unit 3 resulted in significant net emissions increases (as defined by the Kentucky NSPS regulations, which incorporate the federal NSPS regulations) of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the NSPS requirements of the Kentucky SIP.

137.   TVA did not comply with the NSPS requirements of CAA §111(e), 42 U.S.C. §7411(e), or the Kentucky SIP with respect to the modifications at Paradise Unit 3. Among other things, TVA failed to obtain a permit amendment establishing an appropriate NSPS limit as required by the Kentucky SIP prior to commencing construction of the major modifications at Alabama and/or failed to comply with applicable NSPS standards.

138.   TVA has violated and continues to violate the NSPS provisions of the CAA, 42 U.S.C. §7411(e), and the Kentucky SIP at Paradise Unit 3.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

139. As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## SEVENTEENTH CLAIM FOR RELIEF
(Title V violations at Paradise Unit 3)

140. As set forth above, TVA commenced one or more major modifications at Paradise Unit 3, as defined under the Nonattainment NSR and PSD regulations in the Kentucky SIP. As a result, these modifications triggered the requirements to, *inter alia*, undergo LAER and BACT determinations, to obtain Nonattainment NSR and PSD permits establishing emissions limitations that meet LAER and BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

141. Subsequently, TVA failed to submit a complete application for a Title V operating permit for Paradise Unit 3 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet LAER and BACT pursuant to LAER and BACT determinations under Nonattainment NSR and PSD, respectively). TVA failed to obtain a proper Title V operating permit for Paradise Unit 3 that includes emission limitations for $SO_2$ and PM that meet LAER pursuant to a LAER determination and for $NO_X$ that meet BACT pursuant to a

45

BACT determination. TVA thereafter operated Paradise Unit 3 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Kentucky Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

142.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## EIGHTEENTH CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Shawnee Unit 1)

143.   During the period 1989 through 1990, TVA commenced construction of one or more major modifications, as defined in the Act and the Kentucky SIP, at Shawnee Unit 1. These modifications included one or more physical changes to or changes in the method of operation at Unit 1, including, but not necessarily limited to, replacing the secondary superheater and reheater pendant elements and crossover elements, including header stubs.

144.   These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Kentucky Nonattainment NSR regulations, of $SO_2$ and PM and, as defined by the Kentucky

46

PSD regulations, of $NO_X$ and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Kentucky SIP.

145.  TVA did not comply with the Nonattainment NSR (for PM) and PSD (for $SO_2$ and $NO_X$) requirements in the Kentucky SIP with respect to the major modifications at Shawnee Unit 1. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Kentucky SIP prior to commencing construction and operation of the major modifications at Shawnee Unit 1.  TVA also did not undergo LAER and BACT determinations in connection with these major modifications.  As such TVA failed to limit emissions to the LAER level for $SO_2$ and PM and failed to limit emissions to the BACT level for $NO_X$, as would have been determined by the Commonwealth of Kentucky and as required by the Kentucky SIP.

146.  TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Kentucky SIP at Shawnee Unit 1.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

47

147.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## NINETEENTH CLAIM FOR RELIEF
(Minor NSR violations at Shawnee Unit 1)

148.   As set forth above, TVA commenced one or more major modifications at Shawnee Unit 1.  These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Shawnee Unit 1 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Kentucky SIP.  401 Ky. Admin Regs. 50:035, §3(4) (repealed Jan. 15, 2001).

149.   TVA did not comply with the minor NSR requirements in the Kentucky SIP with respect to the modifications at Shawnee Unit 1. Among other things, TVA failed to obtain a minor NSR permit as required by the Kentucky SIP prior to undertaking the aforementioned activities at Shawnee Unit 1.

150.   TVA has violated and continues to violate the minor NSR program of the Kentucky SIP at Shawnee Unit 1.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

151.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

48

# TWENTIETH CLAIM FOR RELIEF
## (Title V violations at Shawnee Unit 1)

152.   As set forth above, TVA commenced one or more major modifications at Shawnee Unit 1, as defined under the Nonattainment NSR and PSD regulations in the Kentucky SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain Nonattainment NSR and PSD permits establishing emissions limitations that meet LAER and BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

153.   Subsequently, TVA failed to submit a complete application for a Title V operating permit for Shawnee Unit 1 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet LAER and BACT pursuant to LAER and BACT determinations under Nonattainment NSR and PSD).  TVA failed to obtain a proper Title V operating permit for Shawnee Unit 1 that includes emission limitations for PM that met LAER pursuant to a LAER determination and for $NO_X$ and $SO_2$ that meet BACT pursuant to a BACT determination.  TVA thereafter operated Shawnee Unit 1 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable

49

requirements for which the source was not in compliance.  TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Kentucky Title V operating permit program regulations.  Unless restrained by an order of this Court, these violations will continue.

154.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-FIRST CLAIM FOR RELIEF
(Nonattainment NSR and PSD violations at Shawnee Unit 4)

155.   During 1990, TVA commenced construction of one or more major modifications, as defined in the Act and the Kentucky SIP, at Shawnee Unit 4. These modifications included one or more physical changes to or changes in the method of operation at Unit 4, including, but not necessarily limited to, replacing the secondary superheater and reheater pendant elements and crossover elements, including header stubs.

156.   These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Kentucky Nonattainment NSR regulations, of $SO_2$ and PM and, as defined by the Kentucky PSD regulations, of $NO_X$ and otherwise met the criteria sufficient to render the changes subject to the Nonattainment NSR and PSD permitting programs of the Kentucky SIP.

50

157. TVA did not comply with the Nonattainment NSR (for PM) and PSD (for $SO_2$ and $NO_X$) requirements in the Kentucky SIP with respect to the major modifications at Shawnee Unit 4. Among other things, TVA failed to obtain Nonattainment NSR and PSD permits as required by the Kentucky SIP prior to commencing construction and operation of the major modifications at Shawnee Unit 4. TVA also did not undergo LAER and BACT determinations in connection with these major modifications. As such TVA failed to limit emissions to the LAER level for and $SO_2$ and PM and failed to limit emissions to the BACT level for $NO_X$, as would have been determined by the Commonwealth of Kentucky and as required by the Kentucky SIP.

158. TVA has violated and continues to violate CAA §§165(a), 172(a)(5) and 173, 42 U.S.C. §§7475(a), 7502(a)(5) and 7503, and the Nonattainment NSR and PSD provisions of the Kentucky SIP at Shawnee Unit 4. Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

159. As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-SECOND CLAIM FOR RELIEF
(Minor NSR violations at Shawnee Unit 4)

160.   As set forth above, TVA commenced one or more major modifications at Shawnee Unit 4.  These activities resulted in an increase in the issuance of $NO_X$, $SO_2$, and PM from Shawnee Unit 4 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Kentucky SIP.  401 Ky. Admin Regs. 50:035, §3(4) (repealed Jan. 15, 2001).

161.   TVA did not comply with the minor NSR requirements in the Kentucky SIP with respect to the modifications at Shawnee Unit 4.  Among other things, TVA failed to obtain a minor NSR permit as required by the Kentucky SIP prior to undertaking the aforementioned activities at Shawnee Unit 4.

162.   TVA has violated and continues to violate the minor NSR program of the Kentucky SIP at Shawnee Unit 4.  Unless restrained by an order of this Court, these violations of the Act and the Kentucky SIP will continue.

163.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-THIRD CLAIM FOR RELIEF
(Title V violations at Shawnee Unit 4)

164. As set forth above, TVA commenced one or more major modifications at Shawnee Unit 4, as defined under the Nonattainment NSR and PSD regulations in the Kentucky SIP. As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain Nonattainment NSR and PSD permits establishing emissions limitations that meet LAER and BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

165. Subsequently, TVA failed to submit a complete application for a Title V operating permit for Shawnee Unit 4 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet LAER and BACT pursuant to LAER and BACT determinations under Nonattainment NSR and PSD). TVA failed to obtain a proper Title V operating permit for Shawnee Unit 4 that includes emission limitations for PM that meet LAER pursuant to a LAER determination and for $NO_X$ and $SO_2$ that meet BACT pursuant to a BACT determination. TVA thereafter operated Shawnee Unit 4 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable

53

requirements for which the source was not in compliance.  TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Kentucky Title V operating permit program regulations.  Unless restrained by an order of this Court, these violations will continue.

166.   As provided in the Kentucky SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-FOURTH CLAIM FOR RELIEF
(PSD violations at Allen Unit 3)

167.   During the period from 1992 to 1993, TVA commenced construction of one or more major modifications, as defined in the Act, the Tennessee SIP, and the Memphis/Shelby County local program at Allen Unit 3.  These modifications included one or more physical changes to or changes in the method of operation at Unit 3, including, but not necessarily limited to replacing the horizontal reheater with a redesigned reheater.

168.   These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations and the Memphis/Shelby County local program, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP and the Memphis/Shelby County local program.

54

169. TVA did not comply with the PSD requirements in the Tennessee SIP or the Memphis/Shelby County local program with respect to the major modifications at Allen Unit 3. Among other things, TVA failed to obtain a PSD permit as required by the Tennessee SIP and the Memphis/Shelby County local program prior to commencing construction and operation of the major modifications at Allen Unit 3. TVA also did not undergo a BACT determination in connection with these major modifications. As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the local permitting authority and as required by the Tennessee SIP and the Memphis/Shelby County local program.

170. TVA has violated and continues to violate CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP and the Memphis/Shelby County local program at Allen Unit 3. Unless restrained by an order of this Court, these violations of the Act, the Tennessee SIP and the Memphis/Shelby County local program will continue.

171. As provided in the Tennessee SIP and the Memphis/Shelby County local program, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

# TWENTY-FIFTH CLAIM FOR RELIEF
## (Minor NSR violations at Allen Unit 3)

172.   As set forth above, TVA commenced one or more major modifications at Allen Unit 3.  These physical changes to or changes in the method of operation of Allen Unit 3 resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from Allen Unit 3 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP and the Memphis/Shelby County local program.

173.   TVA did not comply with the minor NSR requirements in the Tennessee SIP or the Memphis/Shelby County local program with respect to the modifications at Allen Unit 3. Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP and the Memphis/Shelby County local program prior to undertaking the aforementioned activities at Allen Unit 3.

174.   TVA has violated and continues to violate the minor NSR program of the Tennessee SIP and the Memphis/Shelby County local program at Allen Unit 3.  Unless restrained by an order of this Court, these violations of the Act, the Tennessee SIP and the Memphis/Shelby County local program will continue.

175.   As provided in the Tennessee SIP and the Memphis/Shelby County local program, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-SIXTH CLAIM FOR RELIEF
### (Title V violations at Allen Unit 3)

176.   As set forth above, TVA commenced one or more major modifications at Allen Unit 3, as defined under the PSD regulations in the Tennessee SIP and the Memphis/Shelby County local program.  As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

177.   Subsequently, TVA failed to submit a complete application for a Title V operating permit for Allen Unit 3 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD).  TVA failed to obtain a proper Title V operating permit for Allen Unit 3 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated Allen Unit 3 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.  TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C.

57

§§7661a(a) and 7661c(a), and the Tennessee and Memphis/Shelby County Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

178.    As provided in the Tennessee SIP and the Memphis/Shelby County local program, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### (Minor NSR violations at Bull Run Unit 1)

179.    During 1988, TVA commenced construction of one or more major modifications, as defined in the Act and the Tennessee SIP, at Bull Run Unit 1. These modifications included one or more physical changes to or changes in the method of operation at Unit 1, including, but not necessarily limited to replacing the secondary superheater outlet pendant elements and all economizer elements in each of two furnaces.

180.    These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP.

181.    TVA did not comply with the PSD requirements in the Tennessee SIP with respect to the major modifications at Bull Run Unit 1. Among other

things, TVA failed to obtain a PSD permit as required by the Tennessee SIP prior to commencing construction and operation of the major modifications at Bull Run Unit 1. TVA also did not undergo a BACT determination in connection with these major modifications. As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the State of Tennessee and as required by the Tennessee SIP.

182. Claims regarding any violations of CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP at Bull Run Unit 1 were and are being litigated in National Parks Conservation Ass'n et al. v. TVA, No. 3:01-CV-071, 2010 U.S. Dist. LEXIS 31682 (E.D. Tenn. March 31, 2010), appeal pending, No. 10-5626 (6th Cir.). Nevertheless, the physical changes to or changes in the method of operation of Bull Run Unit 1 set forth above resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from Bull Run Unit 1 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP.

183. TVA did not comply with the minor NSR requirements in the Tennessee SIP with respect to the modifications at Bull Run Unit 1. Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP prior to undertaking the aforementioned activities at Bull Run Unit 1.

184.   TVA has violated and continues to violate the minor NSR program of the Tennessee SIP at Bull Run Unit 1.  Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

185.   As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-EIGHTH CLAIM FOR RELIEF
(Title V violations at Bull Run Unit 1)

186.   As set forth above, TVA commenced one or more major modifications at Bull Run Unit 1, as defined under the PSD regulations in the Tennessee SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

187.   Subsequently, TVA failed to submit a complete application for a Title V operating permit for Bull Run Unit 1 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD).  TVA failed to obtain a proper Title V operating

60

permit for Bull Run Unit 1 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated Bull Run Unit 1 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Tennessee Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

188.   As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## TWENTY-NINTH CLAIM FOR RELIEF
(PSD violations at Cumberland Unit 1)

189.   During 1996, TVA commenced construction of one or more major modifications, as defined in the Act and the Tennessee SIP, at Cumberland Unit 1. These modifications included one or more physical changes to or changes in the method of operation at Unit 1, including, but not necessarily limited to replacing and redesigning the front and rear secondary superheater outlet headers, replacing the secondary superheater pendant elements and replacing the lower slope and lower waterwalls.

61

190.  These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP.

191.  TVA did not comply with the PSD requirements in the Tennessee SIP with respect to the major modifications at Cumberland Unit 1. Among other things, TVA failed to obtain a PSD permit as required by the Tennessee SIP prior to commencing construction and operation of the major modifications at Cumberland Unit 1.  TVA also did not undergo a BACT determination in connection with these major modifications.  As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the State of Tennessee and as required by the Tennessee SIP.

192.  TVA has violated and continues to violate CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP at Cumberland Unit 1. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

193.  As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTIETH CLAIM FOR RELIEF
### (Minor NSR violations at Cumberland Unit 1)

194.   As set forth above, TVA commenced one or more major modifications at Cumberland Unit 1.  These physical changes to or changes in the method of operation of Cumberland Unit 1 resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from Cumberland Unit 1 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP.

195.   TVA did not comply with the minor NSR requirements in the Tennessee SIP with respect to the modifications at Cumberland Unit 1. Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP prior to undertaking the aforementioned activities at Cumberland Unit 1.

196.   TVA has violated and continues to violate the minor NSR program of the Tennessee SIP at Cumberland Unit 1.  Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

197.   As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-FIRST CLAIM FOR RELIEF
### (Title V violations at Cumberland Unit 1)

198.   As set forth above, TVA commenced one or more major modifications at Cumberland Unit 1, as defined under the PSD regulations in the Tennessee SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

199.   Subsequently, TVA failed to submit a complete application for a Title V operating permit for Cumberland Unit 1 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD).  TVA failed to obtain a proper Title V operating permit for Cumberland Unit 1 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated Cumberland Unit 1 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.  TVA's conduct violated §§502(a) and 504(a) of the Act,

64

42 U.S.C. §§7661a(a) and 7661c(a), and the Tennessee Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

200. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-SECOND CLAIM FOR RELIEF
(PSD violations at Cumberland Unit 2)

201. During 1994, TVA commenced construction of one or more major modifications, as defined in the Act and the Tennessee SIP, at Cumberland Unit 2. These modifications included one or more physical changes to or changes in the method of operation at Unit 2, including, but not necessarily limited to replacing and redesigning the front and rear secondary superheater outlet headers, replacing the secondary superheater pendant elements and replacing the lower slope and lower waterwalls.

202. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP.

203. TVA did not comply with the PSD requirements in the Tennessee SIP with respect to the major modifications at Cumberland Unit 2. Among other things, TVA failed to obtain a PSD permit as required by the Tennessee SIP prior to commencing construction and operation of the major modifications at Cumberland Unit 2. TVA also did not undergo a BACT determination in connection with these major modifications. As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the State of Tennessee and as required by the Tennessee SIP.

204. TVA has violated and continues to violate CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP at Cumberland Unit 2. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

205. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-THIRD CLAIM FOR RELIEF
### (Minor NSR violations at Cumberland Unit 2)

206. As set forth above, TVA commenced one or more major modifications at Cumberland Unit 2. These physical changes to or changes in the method of operation of Cumberland Unit 2 resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from Cumberland Unit 2 and

66

otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP.

207. TVA did not comply with the minor NSR requirements in the Tennessee SIP with respect to the modifications at Cumberland Unit 2. Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP prior to undertaking the aforementioned activities at Cumberland Unit 2.

208. TVA has violated and continues to violate the minor NSR program of the Tennessee SIP at Cumberland Unit 2. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

209. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

### THIRTY-FOURTH CLAIM FOR RELIEF
(Title V violations at Cumberland Unit 2)

210. As set forth above, TVA commenced one or more major modifications at Cumberland Unit 2, as defined under the PSD regulations in the Tennessee SIP. As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to

67

operate in compliance with such limitations. TVA failed to satisfy these requirements.

211. Subsequently, TVA failed to submit a complete application for a Title V operating permit for Cumberland Unit 2 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD). TVA failed to obtain a proper Title V operating permit for Cumberland Unit 2 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated Cumberland Unit 2 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Tennessee Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

212. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-FIFTH CLAIM FOR RELIEF
(PSD violations at John Sevier Unit 3)

213.   During 1986, TVA commenced construction of one or more major modifications, as defined in the Act and the Tennessee SIP, at John Sevier Unit 3. These modifications included one or more physical changes to or changes in the method of operation at Unit 3, including, but not necessarily limited to replacing the superheater platen elements, all burner tube panels in both furnaces, and the waterwalls in the front, rear, and sidewalls of both furnaces.

214.   These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP.

215.   TVA did not comply with the PSD requirements in the Tennessee SIP with respect to the major modifications at John Sevier Unit 3. Among other things, TVA failed to obtain a PSD permit as required by the Tennessee SIP prior to commencing construction and operation of the major modifications at John Sevier Unit 3.  TVA also did not undergo a BACT determination in connection with these major modifications.  As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the State of Tennessee and as required by the Tennessee SIP.

69

216. TVA has violated and continues to violate CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP at John Sevier Unit 3. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

217. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-SIXTH CLAIM FOR RELIEF
(Minor NSR violations at John Sevier Unit 3)

218. As set forth above, TVA commenced one or more major modifications at John Sevier Unit 3. These physical changes to or changes in the method of operation of John Sevier Unit 3 resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from John Sevier Unit 3 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP.

219. TVA did not comply with the minor NSR requirements in the Tennessee SIP with respect to the modifications at John Sevier Unit 3. Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP prior to undertaking the aforementioned activities at John Sevier Unit 3.

70

220.   TVA has violated and continues to violate the minor NSR program of the Tennessee SIP at John Sevier Unit 3.  Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

221.   As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-SEVENTH CLAIM FOR RELIEF
(Title V violations at John Sevier Unit 3)

222.   As set forth above, TVA commenced one or more major modifications at John Sevier Unit 3, as defined under the PSD regulations in the Tennessee SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

223.   Subsequently, TVA failed to submit a complete application for a Title V operating permit for John Sevier Unit 3 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD).  TVA failed to obtain a proper Title V operating

71

permit for John Sevier Unit 3 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated John Sevier Unit 3 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Tennessee Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

224. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-EIGHTH CLAIM FOR RELIEF
(PSD violations at Kingston Unit 6)

225. During 1989, TVA commenced construction of one or more major modifications, as defined in the Act and the Tennessee SIP, at Kingston Unit 6. These modifications included one or more physical changes to or changes in the method of operation at Unit 6, including, but not necessarily limited to replacing all reheater and superheater intermediate pendant elements, all superheater crossover tubes, and the lower horizontal and side waterwalls of the superheater and the reheater furnaces.

72

226.   These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP.

227.   TVA did not comply with the PSD requirements in the Tennessee SIP with respect to the major modifications at Kingston Unit 6. Among other things, TVA failed to obtain a PSD permit as required by the Tennessee SIP prior to commencing construction and operation of the major modifications at Kingston Unit 6.  TVA also did not undergo a BACT determination in connection with these major modifications.  As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the State of Tennessee and as required by the Tennessee SIP.

228.   TVA has violated and continues to violate CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP at Kingston Unit 6. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

229.   As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## THIRTY-NINTH CLAIM FOR RELIEF
(Minor NSR violations at Kingston Unit 6)

230.    As set forth above, TVA commenced one or more major modifications at Kingston Unit 6.  These physical changes to or changes in the method of operation of Kingston Unit 6 resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from Kingston Unit 6 and otherwise met the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP.

231.    TVA did not comply with the minor NSR requirements in the Tennessee SIP with respect to the modifications at Kingston Unit 6.  Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP prior to undertaking the aforementioned activities at Kingston Unit 6.

232.    TVA has violated and continues to violate the minor NSR program of the Tennessee SIP at Kingston Unit 6.  Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

233.    As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FORTIETH CLAIM FOR RELIEF
(Title V violations at Kingston Unit 6)

234.    As set forth above, TVA commenced one or more major modifications at Kingston Unit 6, as defined under the PSD regulations in the Tennessee SIP.  As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

235.    Subsequently, TVA failed to submit a complete application for a Title V operating permit for Kingston Unit 6 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD).  TVA failed to obtain a proper Title V operating permit for Kingston Unit 6 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated Kingston Unit 6 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.  TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C.

75

§§7661a(a) and 7661c(a), and the Tennessee Title V operating permit program regulations. Unless restrained by an order of this Court, these violations will continue.

236. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FORTY-FIRST CLAIM FOR RELIEF
(PSD violations at Kingston Unit 8)

237. During the period from 1989 to 1990, TVA commenced construction of one or more major modifications, as defined in the Act and the Tennessee SIP, at Kingston Unit 8. These modifications included one or more physical changes to or changes in the method of operation at Unit 8, including, but not necessarily limited to replacing all reheater and superheater intermediate pendant elements, all superheater crossover tubes, and the lower horizontal and side waterwalls of the superheater and the reheater furnaces.

238. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the Tennessee PSD regulations, of the pollutants $NO_X$, $SO_2$, and PM and otherwise met the criteria sufficient to render the changes subject to the PSD permitting program of the Tennessee SIP.

239.  TVA did not comply with the PSD requirements in the Tennessee SIP with respect to the major modifications at Kingston Unit 8. Among other things, TVA failed to obtain a PSD permit as required by the Tennessee SIP prior to commencing construction and operation of the major modifications at Kingston Unit 8.  TVA also did not undergo a BACT determination in connection with these major modifications.  As such TVA failed to limit emissions to the BACT level for control of $NO_X$, $SO_2$, and PM, as would have been determined by the State of Tennessee and as required by the Tennessee SIP.

240.  TVA has violated and continues to violate CAA §165(a), 42 U.S.C. §7475(a), and the PSD provisions of the Tennessee SIP at Kingston Unit 8. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

241.  As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FORTY-SECOND CLAIM FOR RELIEF
(Minor NSR violations at Kingston Unit 8)

242.  As set forth above, TVA commenced one or more major modifications at Kingston Unit 8.  These physical changes to or changes in the method of operation of Kingston Unit 8 resulted in an increase in the discharge of the air contaminants $NO_X$, $SO_2$, and PM from Kingston Unit 8 and otherwise met

77

the criteria sufficient to render the changes subject to the minor NSR permitting program of the Tennessee SIP.

243. TVA did not comply with the minor NSR requirements in the Tennessee SIP with respect to the modifications at Kingston Unit 8. Among other things, TVA failed to obtain a minor NSR permit as required by the Tennessee SIP prior to undertaking the aforementioned activities at Kingston Unit 8.

244. TVA has violated and continues to violate the minor NSR program of the Tennessee SIP at Kingston Unit 8. Unless restrained by an order of this Court, these violations of the Act and the Tennessee SIP will continue.

245. As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## FORTY-THIRD CLAIM FOR RELIEF
(Title V violations at Kingston Unit 8)

246. As set forth above, TVA commenced one or more major modifications at Kingston Unit 8, as defined under the PSD regulations in the Tennessee SIP. As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. TVA failed to satisfy these requirements.

78

247.   Subsequently, TVA failed to submit a complete application for a Title V operating permit for Kingston Unit 8 and to identify all applicable requirements, accurately certify compliance with such requirements, and include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD).  TVA failed to obtain a proper Title V operating permit for Kingston Unit 8 that includes emission limitations for $NO_X$, $SO_2$ and PM that meet BACT pursuant to a BACT determination. TVA thereafter operated Kingston Unit 8 without meeting such limitations and without having a operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.  TVA's conduct violated §§502(a) and 504(a) of the Act, 42 U.S.C. §§7661a(a) and 7661c(a), and the Tennessee Title V operating permit program regulations.  Unless restrained by an order of this Court, these violations will continue.

248.   As provided in the Tennessee SIP, the violations set forth above subject TVA to injunctive relief and civil penalties of up to $25,000 per day for each such violation.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the Plaintiffs request that this Court:

1.     Permanently enjoin TVA from operating Allen Unit 3, Bull Run Unit 1, Colbert Unit 5, Cumberland Units 1 and 2, John Sevier Unit 3, Kingston Units 6 and 8, Paradise Units 1, 2 and 3, Shawnee Units 1 and 4, and Widows Creek Unit 5 including the construction of future modifications, except in accordance with the Clean Air Act, applicable federal regulatory requirements and the applicable state SIP provisions (including the Memphis/Shelby County local program);

2.     Order TVA to remedy its past violations by, among other things, requiring TVA to install and operate, as appropriate, controls to meet emissions limits defined by the BACT or LAER standard, as applicable, at Allen Unit 3, Colbert Unit 5, Cumberland Units 1 and 2, John Sevier Unit 3, Kingston Units 6 and 8, Paradise Units 1, 2 and 3, Shawnee Units 1 and 4, and Widows Creek Unit 5 for $SO_2$, $NO_X$ and PM;

3.     Order TVA to remedy its past violations by, among other things, requiring TVA to apply for appropriate Title V permit conditions for Allen Unit 3, Bull Run Unit 1, Colbert Unit 5, Cumberland Units 1 and 2, John Sevier Unit 3, Kingston Units 6 and 8, Paradise Units 1, 2 and 3, Shawnee Units 1 and 4, and

Widows Creek Unit 5 which account for the past modifications at such units and include appropriate terms and conditions;

4.    Order TVA to remedy its past violations by, among other things, requiring TVA to apply for appropriate minor NSR permits for Allen Unit 3, Bull Run Unit 1, Colbert Unit 5, Cumberland Units 1 and 2, John Sevier Unit 3, Kingston Units 6 and 8, Paradise Units 1, 2 and 3, Shawnee Units 1 and 4, and Widows Creek Unit 5 which account for the past modifications at such units and include appropriate terms and conditions;

5.    Order TVA to remedy its past violations by, among other things, requiring TVA to apply for appropriate permit amendments to include NSPS emissions limitations required for Colbert Unit 5 and Paradise Unit 3;

6.    Require TVA to pay civil penalties up to the statutory maximum per day per violation to Plaintiffs that are authorized to received such penalties, i.e., Plaintiffs State of Alabama, Commonwealth of Kentucky, and State of Tennessee;

7.    Order TVA to pay fees and costs as allowed by law.

8.    Order such other relief as is appropriate and necessary.

Respectfully submitted,

For the STATE OF ALABAMA AND
THE ALABAMA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT

LUTHER STRANGE
Attorney General

By:

S. Shawn Sibley
Assistant Attorney General &
 Associate General Counsel
Alabama Department of
 Environmental Management
1400 Coliseum Boulevard
Montgomery, AL 36130
(334) 271-7855
Fax: (334) 394-4332
ssibley@adem.state.al.us
Ala. Bar No. ASB-2802-Y49S

*(Signatures continued on next page.)*

For the COMMONWEALTH OF
KENTUCKY

ENERGY AND ENVIRONMENT
CABINET
Office of General Counsel

By:

_____

John G. Horne, II
General Counsel
Environmental Protection
Legal Division
300 Fair Oaks Lane
Frankfort, KY 40601
(502) 564-2150
Fax: (502) 564-4245
john.horne@ky.gov
Ky. Bar No. 83826

*(Signatures continued on next page.)*

83

For the STATE OF NORTH
CAROLINA *ex rel.* ATTORNEY
GENERAL ROY COOPER

ROY COOPER
Attorney General

By:

James C. Gulick
  Senior Deputy Attorney General
  NC Bar No. 6179
  jgulick@ncdoj.gov
Marc Bernstein
  Special Deputy Attorney General
  NC Bar No. 21642
  mbernstein@ncdoj.gov
North Carolina Department of Justice
P.O. Box 629
114 West Edenton Street
Raleigh, NC 27602
(919) 716-6600
Fax: (919) 716-6767

*(Signatures continued on next page.)*

84

For the STATE OF TENNESSEE

ROBERT E. COOPER, JR.
Attorney General & Reporter
Tenn. BPR No. 10934

Phillip R. Hilliard
Senior Counsel
Office of the Tennessee Attorney
  General & Reporter
Environmental Division
P.O. Box 20207
425 Fifth Avenue North
Nashville, TN 37202
(615) 741-4612
Fax: (615) 741-8724
Phillip.Hilliard@ag.tn.gov
Tenn. BPR No. 21524

DATED: April 14, 2011.

85